UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TYHEEM Y. KEESH,

                              Plaintiff,

                                                            **MEMORANDUM OPINION**
v.                                                          **AND ORDER**

QUANDERA QUICK, et al.,                                     19-CV-08942 (PMH)

                              Defendants.
-----------------------------------------------------------X
PHILIP M. HALPERN, United States District Judge:

Plaintiff Tyheem Y. Keesh ("Plaintiff"),[1] proceeding *pro se* and *in forma pauperis* ("IFP"),

commenced this action on September 26, 2019, bringing claims under 42 U.S.C. §§ 1981, 1983,

and 1985 involving violations of the First, Fourth, Eighth, and Fourteenth Amendments, and the

Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, against a number

of employees from the New York State Department of Corrections and Community Supervision

("DOCCS") in their individual and official capacities, as follows: Quandera Quick, Inmate

Grievance Program Supervisor ("Quick"); J.P. Franco, Correction Officer ("Franco"); Salvatore

P. Gregory, Correction Officer ("Gregory"); D. Rodriguez, Correction Officer ("Rodriguez"); B.

Bodge, Correction Lieutenant ("Bodge"); S.A. Coughlin, Correction Lieutenant ("Coughlin"); R.

Williams, Correction Lieutenant ("Williams"); Michael Barnes, Correction Captain/Acting

Deputy Superintendent of Security ("Barnes"); Michael Capra, Superintendent ("Capra"); Mark

Royce, former Deputy Superintendent of Security ("Royce"); Shelley Mallozzi, Inmate Grievance

Program Director ("Mallozzi"); and Rebecca A. Loren, Inmate Grievance Program Coordinator

("Loren" and collectively, "Defendants"). (Doc. 2, "Compl."). Plaintiff alleges in the Complaint,

*inter alia*, that: (1) Franco assaulted him on August 2, 2018; (2) certain Defendants searched

---

[1] Also formerly known as Tyheem Allah and Tyheem Mills.

Plaintiff's cell and frisked him on April 3, 2019; (3) certain Defendants violated his due process rights during a disciplinary hearing that took place on April 7, 2019; and (4) Bodge abused him verbally on May 22, 2019. Plaintiff alleges further that these were acts of retaliation against him, many of which he insists were conspiracies.

By order dated October 11, 2019, Chief Judge McMahon noted that while incarcerated, Plaintiff filed four cases that were dismissed as frivolous, malicious, or for failure to state a claim (Doc. 9 at 2),[2] and ordered Plaintiff to show cause within thirty days why he should not be barred under 28 U.S.C. § 1915(g) from filing further actions IFP in this Court while he is a prisoner (*id.* at 3). The Court noted also that Plaintiff did not allege any facts suggesting that he is in imminent danger of serious physical injury. (*Id.* at 2).

Plaintiff, in response to Judge McMahon's Order to Show Cause, filed a declaration on November 8, 2019. (Doc. 10, "Decl."). Plaintiff asserted in in his declaration the same facts that are alleged in the Complaint, but he argued that based on those facts, his life is in danger. (Decl. ¶ 5). Plaintiff asserted that Defendants Franco, Gregory, Bodge, Coughlin, and Williams are members of "The Brotherhood." (*Id.*). Plaintiff describes The Brotherhood as "a group of DOCC's workers who are white supremacists, [and] have a deep hatred for non-whites, especially Blacks." (*Id.* at 2, n.1). Plaintiff alleged that Bodge threatened to lynch him and Franco told Plaintiff "he was going down." (*Id.* ¶¶ 5, 11). Plaintiff alleges further that Defendants have conspired to

---

[2] *See Mills v. Evangelista*, No. 01-CV-7538 (S.D.N.Y. Aug. 14, 2001) (dismissing complaint under 28 U.S.C. § 1915(e)(2)), *appeal dismissed*, No. 01-0232 (2d Cir. July 3, 2003); *Mills v. Coughlin*, No. 93-CV-0109 (W.D.N.Y. Oct. 4, 1995) (dismissing complaint for failure to allege facts describing a violation of federal law), *appeal dismissed*, No. 95-2753 (2d Cir. May 6, 1996) (appeal dismissed as lacking in merit). Plaintiff notes also in the Complaint "his most recent civil action in the Southern District of New York," which was resolved against Plaintiff by Judge Gardephe at summary judgment on March 25, 2019. (Compl. ¶¶ 20-21; No. 13-CV-02040 (S.D.N.Y. Mar. 25, 2019)).

discipline him and retaliate against him for his complaints against staff because members of The Brotherhood do not accept prisoners complaining about them. (*Id.* ¶ 10).

On December 4, 2019, Judge Karas granted Plaintiff's request to proceed IFP (Doc. 12), and on December 5, 2019, Judge Karas issued an Order of Service (Doc. 13). On April 16, 2020, this action was reassigned to this Court. On July 13, 2020, Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 46; Doc. 47, "Defs. Br."), and Plaintiff opposed the motion on August 18, 2020 (Doc. 48, "Pl. Opp'n").[3] Defendants did not file any reply papers.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part.

## BACKGROUND[4]

### I.   Franco Assault

The Complaint alleges that Plaintiff was an Inmate Grievance Resolution Committee Representative ("IGRC Rep") at Sing Sing Correctional Facility ("Sing Sing"), and as such, had a pass which permitted him to leave his housing block unescorted. (Compl. ¶¶ 27, 28). Plaintiff alleges that on August 2, 2018, as he was leaving Sing Sing Housing Block 7 ("HB7") at 8:30 a.m., Franco asked Plaintiff "where the fuck you think you going" and directed him back to the housing block. (*Id.* ¶ 32). Before Plaintiff could return into HB7, Franco slammed the gate on Plaintiff and it bounced off his back; Plaintiff had waited close to the gate. (*Id.* ¶ 33). A short while later, Franco permitted Plaintiff to leave the housing block and go to his program as IGRC Rep. (*Id.*). Plaintiff then filed a grievance, SS 59891-18. (*Id.* ¶ 35). Plaintiff alleges that Franco is a member of The Brotherhood, does not like any prisoner who possesses a pass, and has "a deep

---

[3] Citations to the parties' brief correspond to the pagination generated by ECF.

[4] The facts recited herein are taken from the allegations of the Complaint and Plaintiff's Declaration.

3

hatred for Blacks, prisoners in general, and white prisoners who are sympathetic or friendly to non-white prisoners." (*Id.* ¶ 28).

At some unidentified time, Plaintiff was escorted to the medical department and examined by medical personnel. (*Id.* ¶ 37). As part of a conspiracy by "multiple officials" in retaliation for having filed a grievance against Franco, on August 4, 2018, Franco wrote a misbehavior report ("MBR") against Plaintiff. (*Id.* ¶¶ 38, 39). As a result of the MBR, Plaintiff was placed in keeplock for eight days. (*Id.* ¶ 40). Plaintiff's grievance against Franco was denied by Capra on September 26, 2018. (*Id.* ¶ 39). Approximately nine months later, on April 2, 2019, Franco threatened Plaintiff, stating that Plaintiff was "going down" because he had filed a grievance against Franco on August 2, 2018. (*Id.* ¶ 57).

II.     April 3, 2019 Cell Search

The Complaint alleges that on April 2, 2019, Plaintiff complained to Barnes about prison officials hindering him from performing his duties as an IGRC Rep. (*Id.*). Every time Plaintiff complains to Barnes, "he is subjected to a special cell search, regular search, misbehavior report and/or confinement." (*Id.*). Plaintiff alleges that, in violation of an internal DOCCS Directive, on April 3, 2019, Plaintiff's cell was searched by Gregory and Rodriguez, who also conducted a strip frisk of Plaintiff pursuant to Williams's order (the "Cell Search"). (*Id.* ¶ 42). As a result of the Cell Search, Gregory and Rodriguez confiscated a NCAA bracket, placed Plaintiff in keeplock, and filed an MBR against Plaintiff for possessing gambling material and contraband. (*Id.* ¶ 43). Plaintiff alleges that he wrote a complaint to Royce, seeking an investigation for retaliatory conduct (*id.* ¶ 57); and that Plaintiff filed a grievance, SS 60879-19 (*id.* ¶ 44). Plaintiff believes that no investigation was ever conducted pursuant to his complaint to Royce. (*Id.* ¶ 57).

Plaintiff alleges that the Cell Search was a conspiracy by and between Capra, Royce, Barnes, Williams, Coughlin, Bodge, Quick, Gregory, and Rodriguez, as retaliation for Plaintiff filing grievances against prison staff and/or participating in his IGRC Rep duties. (*Id.* ¶ 45).

III.    April 7, 2019 Disciplinary Hearing

The Complaint alleges that following the Cell Search, on April 7, 2019 a disciplinary hearing was held ("Tier II Hearing"). (*Id.* ¶ 46). Bodge, as the hearing officer, advised Plaintiff that the NCAA bracket confiscated during the Cell Search constituted a betting slip. (*Id.* ¶¶ 46, 47). Plaintiff maintained that he was not gambling. (*Id.* ¶¶ 48, 49). Plaintiff alleges that Bodge deprived Plaintiff of "presenting material evidence in his defense" (*id.* ¶ 51) in that he was only permitted to call three witnesses to testify, and, although he was released from pre-hearing confinement in order to procure documentary evidence, the printer at the law library was not working; he requested an assistant, but Bodge denied the request (*id.* ¶¶ 58, 59, 63). Plaintiff alleges that the foregoing denied him of due process. (*Id.* ¶ 69). Plaintiff alleges further that Bodge misrepresented Plaintiff's testimony in the written disposition, thus indicating that Bodge is part of the conspiracy against Plaintiff. (*Id.* ¶ 64). Accordingly, Plaintiff filed a grievance against Bodge, SS 60844-19. (*Id.* ¶ 51).

The Complaint alleges that Plaintiff was "found guilty" following the Tier II Hearing, and as a result, he was required to be transferred from HB7 to Housing Block "B" ("HBB"). (*Id.* ¶¶ 66, 67). Plaintiff alleges that HBB is "living torture" in that it is "hostile, violent, provocative, threatening, lowly, anti-therapeutic, uncivil, unusual" and "the smell of drugs, K-2 and marijuana, and cigarette smoke permeates throughout [the] housing block, subjecting all who are there to secondhand smoke daily." (*Id.* at 14, n.10). He alleges further that as a result of this penalty, he

5

was deprived of his packages and commissary, which impeded access to his religious diet and practice of his religion. (*Id.* ¶ 70).

On April 18, 2019, Plaintiff appealed the Tier II Hearing to Capra, but "[a]s part of a retaliatory scheme," Capra refused to render a decision on the appeal. (*Id.* at 9, n.8, ¶ 66). Indeed, Plaintiff alleges that there was a conspiracy by and between Capra, Royce, Barnes, Williams, and Bodge, "to deprive [Plaintiff] of a decision to his Tier II [Hearing] Appeal . . . as part of the conspiracy to prevent [Plaintiff's] privileges from being restored, and to keep him housed in [HBB]." (*Id.* ¶ 66).

IV.     Bodge Verbal Abuse

Plaintiff alleges that on April 16, 2019, Bodge threatened Plaintiff, saying he has "Niggers like [Plaintiff] lynched." (*Id.* ¶ 65). He alleges further that at some unidentified time, Bodge cursed at Plaintiff, calling him "a fucking scumbag." (*Id.*). Accordingly, Plaintiff filed a grievance, SS 60867-19. (*Id.*). Plaintiff alleges that, on May 22, 2019, Bodge verbally abused Plaintiff again by using profanity and racial epithets. (*Id.* ¶ 73).

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

6

has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (alteration in original)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even

7

in a *pro se* case . . . 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

### I.  Failure to State a Claim Under 42 U.S.C. §§ 1981, 1983, and 1985

Plaintiff broadly asserts claims for relief under 42 U.S.C. §§ 1981, 1983, and 1985 involving: (1) a violation of the Eighth Amendment (in connection with the assault by Franco); (2) a violation of the Fourth Amendment (in connection with the Cell Search); (3) the deprivation of procedural due process under the Fourteenth Amendment (in connection with the Tier II Hearing); (4) retaliation in violation of his First Amendment rights (in connection with being an IGRC Rep and/or filing grievances against prison staff); and (5) a conspiracy to violate Plaintiff's constitutional rights in retaliation for his filing grievances. Plaintiff appears also to assert claims involving a violation of his First Amendment right to free exercise of religion and violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA").

#### A.  Plaintiff's Claims Under 42 U.S.C. § 1981

With respect to § 1981, a plaintiff must allege facts to support the following elements: (1) that he is a member of a racial minority; (2) the defendants' intent to discriminate on the basis of

race; and (3) discrimination concerning one of the statute's enumerated activities. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999). Under § 1981, only intentional racial discrimination is prohibited. *Id.*; *see also Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) ("Essential to an allegation under Section 1981 are allegations that the defendant's acts were purposefully discriminatory and racially motivated."). The statute's "enumerated activities" include rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all the laws and proceedings for the security of persons and property." *Brown*, 221 F.3d at 339 (quoting 42 U.S.C. § 1981). However, "§ 1981 does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018). A claim under § 1983 is the exclusive federal remedy for alleged violation of rights guaranteed in 42 U.S.C. § 1981 by state governmental units or state actors. *Id.* at 619-21; *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019). As all of Plaintiff's claims are asserted against employees from DOCCS (Compl. ¶¶ 3-16), Plaintiff's claims against Defendants under § 1981 are dismissed.

### B. Plaintiff's Claims Under 42 U.S.C. § 1983

As regards Plaintiff's § 1983 claims, that law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). As such, in each permutation of a claim under that law, "a plaintiff must demonstrate: '(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state

actor.'" *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019) (quoting *Walker v. Clemson*, No. 11-CV-9623, 2012 WL 2335865, at *3 (S.D.N.Y. June 20, 2012)).

      1.  Claims Against All Defendants in their Official Capacities

As an initial matter, Plaintiff's claims under 42 U.S.C. § 1983 alleged against Defendants in their official capacities seeking money damages must be dismissed. A claim for damages asserted against a state employee in his official capacity is deemed to be a claim against the state and therefore barred by Eleventh Amendment sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Davis v. Westchester Cty. Family Court*, No. 16-CV-9487, 2017 WL 4311039, at *6 (S.D.N.Y. Sept. 26, 2017). State officials acting in their official capacities are not considered persons within the meaning of § 1983 and, therefore, cannot be sued for damages. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). Accordingly, to the extent Plaintiff's claims seeking money damages are alleged against Defendants in their official capacities, they are dismissed.

      2.  Claims Concerning the Franco Assault (Eighth Amendment)

The Eighth Amendment instructs: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. Second, he must allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *7 (S.D.N.Y. Feb. 5, 2021) (citing *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)); *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4-5 (S.D.N.Y.

Sept. 8, 2020). A claim of excessive use of force must set forth allegations sufficient to demonstrate deliberate indifference. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

As regards the objective prong, the alleged conduct must be sufficiently serious to reach constitutional dimensions. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). "A *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Lebron v. Mrzyglod*, No. 14-CV-10290, 2019 WL 3239850, at *14 (S.D.N.Y. July 18, 2019).

The allegations in the Complaint that Franco slammed the gate on Plaintiff and it bounced of his back (Compl. ¶ 33) are not sufficiently serious to satisfy the objective standard. *Peters v. Huttel*, No. 15-CV-9274, 2019 WL 6619602 at *13 (S.D.N.Y. Dec. 5, 2019). Moreover, although Plaintiff alleges that at some unidentified time he was examined by medical personnel before being placed in keeplock, he does not identify any injury suffered. (Compl. ¶ 37). Indeed, after the gate incident, Franco permitted Plaintiff to leave HB7 and Plaintiff proceeded to his IGRC Rep program. (*Id.* ¶ 33). Simply put, the allegations concerning Franco's closure of the gate are the kind of *de minimus* use of force that do not rise to the level of an Eighth Amendment violation. Because the Complaint fails to satisfy the object prong, the Court need not, and does not, reach the question of whether Plaintiff's allegations are sufficient to satisfy the subjective prong.

Accordingly, Plaintiff's Eighth Amendment claim for relief alleged against Franco is dismissed for failure to state a claim.

### 3. Claims Concerning the Cell Search (Fourth Amendment)

The Complaint alleges that Gregory and Rodriguez, upon Williams's order, conducted the Cell Search in violation of an internal DOCCS Directive. (Compl. at ¶¶ 42-43). A violation of a

11

DOCCS Directive, however, does not amount to a § 1983 claim. *Holland v. City of New York*, 197 F. Supp. 3d 529, 548-49 (S.D.N.Y. 2016) ("It is well settled that a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law." (internal quotation marks omitted)); *Hyman v. Holder*, No. 96-CV-7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (concluding that allegations that prison officials failed to follow prison regulations did not state a cognizable § 1983 claim).

To the extent that Plaintiff attempts to plead a violation of the Fourth Amendment based upon the Cell Search and confiscation of his NCAA bracket,[5] the claim must fail. The Fourth Amendment is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). Accordingly, Plaintiff's claim of a Fourth Amendment violation alleged against Williams, Gregory, and Rodriguez in connection with the Cell Search is dismissed.

### 4. Claims Concerning the Tier II Hearing (Fourteenth Amendment)

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."

---

[5] Plaintiff states in his opposition that he is not pressing claims against Gregory and Rodriguez for the Cell Search, but rather describes the Cell Search as part of a narrative to describe the retaliatory conduct of which he complains. (Pl. Opp'n at 2).

*Joseph v. Cuomo*, No. 20-CV-3957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (quoting

*Adams v. Annucci*, No. 17-CV-3794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018)

(alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-8800, 2020 WL 777907, at *9

(S.D.N.Y. Feb. 18, 2020).

Plaintiff alleges that in connection with the Tier II Hearing, he was subjected to a nine-day

pre-hearing confinement, transferred to HBB, and lost commissary and packages privileges.

(Compl. ¶¶ 59, 66, 70). These allegations fail to establish the existence of a constitutionally

significant liberty interest deprivation.

A prisoner's liberty interest is implicated by prison disciplinary proceedings only if the

discipline imposes "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Washington v. Afify*, 681 F.

App'x 43, 45 (2d Cir. 2017). Indeed, dismissal has been found appropriate where the period of

confinement in relation to disciplinary hearings is shorter than 101 days. *Washington*, 681 F. App'x

at 45; *see also Barnes v. Starks*, No. 95-CV-4891, 1996 WL 648956, at *3 (S.D.N.Y. Nov. 6, 1996)

(no protected liberty interest in Sing Sing inmate's twenty-one-day confinement in keeplock);

*Camacho v. Keane*, No. 95-CV-0182, 1996 WL 204483, at *2 (S.D.N.Y. Apr. 25, 1996) (no

protected liberty interest in Sing Sing inmate's forty-day confinement in keeplock); *Schmelzer v.

Norfleet*, 903 F. Supp. 632, 634 (S.D.N.Y. 1995) (no protected liberty interest in Sing Sing

inmate's eleven-day confinement in keeplock).

Moreover, the transfer to HBB and temporary loss of the various privileges alleged in this

case, namely packages and commissary, does not represent the type of deprivation which could

reasonably be viewed as imposing atypical and significant hardship on an inmate. *Frazier v.

Coughlin*, 81 F.3d 313, 315, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and

13

telephone privileges did not amount to an atypical and significant deprivation); *Nogueras v. Coughlin*, No. 94-CV-4094, 1996 WL 487951, at *5 (S.D.N.Y. Aug. 27, 1996) ("Restrictions on telephone use, recreational activities, access to law libraries, visitation, personal property, educational and employment opportunities" did not amount to atypical hardship.).

Because Plaintiff has not alleged plausibly that he possessed a liberty interest, Plaintiff's claim against Defendants for a violation of the Fourteenth Amendment in Connection with the Tier II Hearing are dismissed.

### 5. Claims of Retaliation (First Amendment)

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-9235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-3632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id.* (quoting *Davis*, 320 F.3d at 353). Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official . . . can be

14

characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

"[T]o the extent Plaintiff alleges that the roots of [Defendants'] retaliation are found in Plaintiff's IGRC position, such conduct, liberally construed, constitutes protected activity." *Thomas v. DeCastro*, No. 14-CV-6409, 2019 WL 1428365, at *8 (S.D.N.Y. Mar. 29, 2019). Likewise, his filing of grievances is a protected activity under the First Amendment, *Davis*, 320 F.3d at 353, which Defendants do not dispute. (Defs. Br. at 13-14). Accordingly, Plaintiff meets the first element of a retaliation claim.

Plaintiff alleges that in retaliation for his engaging in these protected activities, the following adverse actions were taken against him: (1) the assault by Franco; (2) Franco's MBR; (3) the Cell Search; (4) the Tier II Hearing; (5) the refusal to decide his appeal of the Tier II Hearing; (6) the verbal abuse by Bodge; and (7) Plaintiff's removal as IGRC Rep. (*See generally* Compl.; Decl.). The Court analyzes each in turn.

      a.  Franco Assault

Plaintiff alleges that Franco is a member of The Brotherhood, does not like any prisoner who possesses an IGRC pass, and has "a deep hatred for Blacks, prisoners in general, and white prisoners who are sympathetic or friendly to non-white prisoners." (Compl. ¶ 28). Plaintiff seeks to link the August 2, 2018 gate incident, which Plaintiff characterizes as an assault, to Franco's alleged disdain for IGRC Reps. (*Id.* ¶ 41; Decl. 7, 10-11).

As an initial matter, as discussed *supra*, the alleged assault as pled by Plaintiff constitutes *de minimus* harm and is thus not actionable as a retaliation claim. *Rivera v. Goord*, 119 F. Supp.

2d 327, 340 (S.D.N.Y. 2000) (dismissing retaliation claim against defendant who "shoved" an inmate on the ground that the harm was *de minimis*). The Complaint also fails to allege sufficiently a causal connection between Franco's act and Plaintiff's protected conduct as an IGRC Rep. Plaintiff's allegations that Franco generally dislikes prisoners, and IGRC Reps in particular, are insufficient to support an inference that the protected conduct was a substantial or motivating factor for the alleged adverse action of slamming the gate on Plaintiff such that it bounced off his back. *Dorsey*, 468 F. App'x at 27. Moreover, Plaintiff also pleads that he held the gate open, and Franco permitted Plaintiff to go to his program as IGRC Rep "a short while after." (Compl. ¶¶ 33-34). Plaintiff's allegations are insufficient to show Franco's retaliatory intent, and accordingly, to the extent Plaintiff claims the Franco assault occurred in retaliation for Plaintiff's status as an IGRC Rep, the claim is dismissed.

To the extent Plaintiff claims the Franco assault occurred in retaliation for filing grievances, this claim too must fail. Plaintiff's grievance against Franco, SS 59891-18, was filed after the gate incident. (*Id.* ¶ 35). The alleged retaliatory event cannot precede the protected activity. *See Lees v. Graduate Center, City Univ. of New York*, 696 Fed. App'x 530, 531 (2d Cir. 2017) (dismissal affirmed because an inference of retaliation does not arise where the adverse action began before the Plaintiff engaged in any protected activity); *Santucci*, 2021 WL 76337, at *7 (dismissing retaliation claim where plaintiffs' "after-the-fact complaints" occurred subsequent to the alleged retaliatory event); *Montgomery v. Strack*, No. 86-CV-3380, 1990 WL 128904 at *3 (S.D.N.Y. Aug. 27, 1990) (plaintiff's removal from the job in the law library could not have been in retaliation for complaints filed where the removal occurred before the complaints were filed); *Thompson v. Racette*, No. 11-CV-1372, 2012 WL 12884469, at *3 (N.D.N.Y. Aug. 2, 2012)

16

(dismissing inmate's retaliation claim where grievance was filed three months after the alleged retaliatory conduct), *aff'd*, 519 F. App'x 32 (2d Cir. 2013) (summary order).

Accordingly, Plaintiff's allegations of retaliation against Franco in connection with the purported assault are dismissed.

      b.  Franco MBR

On a First Amendment retaliation claim, "[c]ircumstantial evidence of causation may exist where the adverse action occurs soon after the protected activity." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 435 (S.D.N.Y. 2010). Plaintiff pleads that Franco filed the MBR on August 4, 2018, two days after Plaintiff filed his grievance against Franco (Compl. ¶¶ 38-40), and as a result of the MBR, Plaintiff was placed in keeplock for eight days. (*Id.* ¶ 40). This strikes this Court as closely proximate in time, and Defendants do not argue otherwise.

Accordingly, Plaintiff's retaliation claim against Franco for filing the MBR will survive dismissal.

      c.  Cell Search

Plaintiff alleges that the Cell Search conducted by Gregory and Rodriguez pursuant to Williams's order was retaliation by Capra, Royce, Barnes, Williams, Coughlin, Bodge, Quick, Gregory, and Rodriguez, for Plaintiff's filing of grievances and/or participating in his IGRC Rep duties. (*Id.* ¶ 45). Courts in this district have concluded that a retaliatory cell search is insufficient to support a First Amendment retaliation claim. *See Adeghe v. Westchester Cty.*, No. 18-CV-7912, 2019 WL 4142470, at *4 (S.D.N.Y. Aug. 30, 2019) (a retaliatory cell search alone is not a cognizable adverse action); *Salahuddin v. Mead*, No. 95-CV-8581, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (cell search cannot support retaliation claim); *Walker v. Keyser*, No. 98-CV-5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 2, 2001) ("[R]etaliatory searches are not

17

actionable under § 1983"), *as amended* (Oct. 17, 2001), *aff'd sub nom. Walker v. Goord*, 131 F. App'x 775 (2d Cir. 2005).

Accordingly, Plaintiff's allegations of retaliation in connection with the Cell Search are dismissed.

### d.   Tier II Hearing

Plaintiff alleges that he Tier II Hearing was conducted on an MBR that was lodged against him as a result of the Cell Search. (Compl. ¶¶ 43, 46, 52). He maintains that Bodge used the tier hearing system and misrepresented Plaintiff's testimony at the hearing in the written disposition in retaliation for Plaintiff's status as an IGRC Rep and/or his filing of grievances against prison staff. (*Id.* ¶ 64; Pl. Opp'n at 3). The Complaint fails to sufficiently allege a causal connection between the alleged adverse action and Plaintiff's protected conduct. *Dorsey*, 468 F. App'x at 27. Plaintiff's claims against Bodge in connection with the Tier II Hearing are speculative and conclusory, and are simply insufficient to support the inference that Plaintiff's status as an IGRC Rep or his filing of grievances were a substantial or motivating factor for the conclusory allegations of "falsification" in the written disposition. Accordingly, Plaintiff's retaliation claims against Bodge in connection with the Tier II Hearing are dismissed.

### e.   Capra's Refusal to Decide the Appeal of the Tier II Hearing

Plaintiff alleges that Capra refused to decide his appeal of the results of the Tier II Hearing, which was "retaliatory strategy" by Capra, Royce, Barnes, Williams, and Bodge to prevent Plaintiff's privileges from being restored, and to keep him housed in HBB. (Compl. ¶ 66). Plaintiff alleged that he grieved such failure and that a DOCCS Committee agreed that the appeal was untimely, but there is no provision to reverse or expunge a guilty disposition as a result of an untimely appeal decision. (*Id.* ¶ 69; Pl. Opp'n at 62-63).

That Capra did not issue a decision in accordance with prison policies does not rise to a constitutional violation. A § 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations or state law. *Holland*, 197 F. Supp. 3d at 548-49; *Hyman*, 2001 WL 262665, at \*6. As regards the other Defendants implicated by Plaintiff's allegations concerning Capra's failure to timely decide the appeal to allegedly prevent Plaintiff's privileges from being restored, and keeping him housed in HBB, Plaintiff fails to sufficiently allege personal involvement. "Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint fatally defective on its face." *Williams*, 2021 WL 431445, at \*6. Plaintiff's sole allegation against these other Defendants is that Barnes allegedly told Plaintiff that neither he, Capra, Royce or Williams wanted to decide the appeal. (Compl. ¶ 69). There is no allegation concerning Bodge's involvement at all, and the allegation against the other Defendants does not adequately allege any personal involvement in Capra's failure to timely render a decision. To the extent Plaintiff claims that Capra's failure to timely decide the appeal was done in retaliation for Plaintiff being an IGRC Rep or filing grievances against prison officials, Plaintiff fails to allege a causal connection between the alleged adverse action and Plaintiff's protected conduct, alleging the ultimate fact of retaliation in a speculative and conclusory manner. *Dorsey*, 468 F. App'x at 27.

Plaintiff's allegations against Capra, Royce, Barnes, Williams, and Bodge in connection with Capra's failure to timely decide Plaintiff's appeal of the Tier II Hearing areinsufficient to establish retaliation and are accordingly dismissed.

f.   Bodge's Verbal Abuse

Verbal abuse, no matter how repugnant, does not give rise to a constitutional violation because 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse but specific

19

constitutional violations. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (dismissing inmate Purcell's complaint because the name calling claim did not allege a constitutional violation). Insulting or disrespectful comments directed at an inmate generally do not rise to the level of an adverse action sufficient to constitute First Amendment violation. *Davis*, 320 F.3d at 353. Plaintiff's claims of retaliatory verbal abuse by Bodge (Compl. ¶¶ 65, 73) do not include any allegations of physical harm, nor are they alleged with any specificity to suggest that they would deter a prisoner of ordinary firmness from exercising his constitutional rights. *Dorsey*, 468 F. App'x at 27. Accordingly, Plaintiff's retaliation claim against Bodge in connection with the alleged verbal abuse is dismissed.

### g.  Removal as IGRC Rep

Plaintiff was removed as an IGRC Rep by Quick, and Plaintiff contends that it was because he filed grievances against prison staff and with a motivation to replace him with a Muslim inmate. (*Id.* ¶¶ 75, 79). Plaintiff alleges that he was removed on April 19, 2019 (*id.* ¶ 72) but was apparently reinstated thereafter, as he was removed again on July 12, 2019 (*id.* ¶ 75). He alleges that on July 15, 2019 he filed grievances about his removal and complained to Capra, Barnes, Mallozzi, and Loren, but they "failed to do anything to grant [Plaintiff] the relief he was required." (*Id.*). Plaintiff's allegations that Quick, as the Inmate Grievance Program Supervisor, retaliated against Plaintiff because of his status as an IGRC Rep are purely speculative and conclusory. "Where, as here, the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation." *Dorsey*, 468 F. App'x at 27.

Plaintiff's allegations against Capra, Barnes, Mallozzi, and Loren for failing to grant the relief requested in his grievance similarly fail to allege any retaliatory motive. There is no federal or constitutional right to an inmate grievance review process. *See e.g., Gilbert v. Goord*, No. 03-

CV-423, 2007 WL 3232273, at *6 (N.D.N.Y. Oct. 31, 2007) ("Because the [inmate] grievance procedures are not constitutionally required, a state's violation of those procedures or its failure to enforce them does not give rise to a claim under section 1983."). To the extent Plaintiff seeks to hold these supervisory defendants liable for actions by Quick, they too fail, as *respondeat superior* is not a basis for liability under § 1983. *See Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999); *see also Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at *15 (S.D.N.Y. Aug. 15, 2012) (complaint to jail superintendent was "insufficient to make out a *prima facie* claim of personal involvement against supervisors"), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012). Instead, a plaintiff seeking to hold a supervisory defendant liable pursuant to § 1983 must allege personal involvement by the defendant. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (noting that supervisory liability requires that the "defendant, through the official's own individual actions, has violated the Constitution" (quoting *Iqbal*, 556 U.S. at 676)); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The complaint herein fails to establish a basis for supervisory liability.

In any event, the grievance upon which this retaliation is allegedly based was filed in response to Plaintiff's removal, and, as discussed above, is therefore not actionable retaliation. *Lees*, 696 F. App'x at 531; *Santucci*, 2021 WL 76337, at *7. Accordingly, Plaintiff's claim that Quick, Capra, Barnes, Mallozzi, and Loren retaliated against him through Quick's termination of his status as an IGRC Rep is dismissed.

### 6. Claims of § 1983 Conspiracy

Plaintiff alleges that most[6] of the retaliatory events discussed *supra*, were conspiracies among various Defendants. To the extent Plaintiff's conspiracy claims are alleged under § 1983, in order to survive a motion to dismiss, the claim must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Concepcion v. City of New York*, No. 05-CV-8501, 2008 WL 2020363, at *5 (S.D.N.Y. May 7, 2008) (affirming the continued viability of the *Ciambriello* standards when analyzing a conspiracy claim *vis-à-vis* a motion to dismiss). The plaintiff must not only allege a conspiracy, but he must also allege the "actual deprivation of constitutional rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2000) (citing *Malsh v. Austin*, 901 F. Supp. 757, 765 (S.D.N.Y. 1995)). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Id.*; *see also Vega v. Artus*, 610 F. Supp. 2d 185, 202-03 (N.D.N.Y. 2009).

As discussed *supra*, Plaintiff has failed to allege plausibly a violation of his Fourth, Eighth, and Fourteenth Amendment rights; and only his First Amendment retaliation claim in connection with the MBR lodged by Franco is held herein to survive Defendants' instant motion.[7] Thus, any

---

[6] The only retaliatory events alleged by Plaintiff that are not pled to have been conspiracies were the purported assault by Franco, the Tier II Hearing, and the verbal abuse by Bodge.

[7] Plaintiff alleges in the Complaint that the "fraudulent and retaliatory penalty imposed" by Bodge deprived Plaintiff "of his packages and commissary, which deprived him of practicing his Religious diet[], compelling [Plaintiff] to change and/or modify his Religious practices" and "thereafter changed his Religion and deprived [him] of [his] ability to represent his fellow prisoners." (Compl. at 70, 88). Defendants did not make any arguments in their Memorandum of Law concerning dismissal of Plaintiff's allegations of violations of the free exercise clause of the First Amendment and RLUIPA. "[I]t is not this

22

conspiracy claims alleged by Plaintiff in connection with the dismissed constitutional claims are likewise dismissed. *Romer*, 119 F. Supp. 2d at 363-64.

Plaintiff's allegation concerning a conspiracy in connection with the August 4, 2018 MBR lodged by Franco was simply that it was part of a conspiracy by "multiple officials" in retaliation for having filed a grievance against Franco. (Compl. ¶¶ 38, 39). He does not identify the members of this conspiracy, the goals of this conspiracy, or when the conspiracy took place. As regards Plaintiff's claims of a violation of the free exercise clause of the First Amendment and RLUIPA, the Court notes that Plaintiff has specifically identified Bodge, Capra, Royce, Barnes, and Williams as conspiring to deprive Plaintiff of practicing his religion. Standing alone, Plaintiff has failed to adequately allege a conspiracy that rises beyond the speculative level. Stated simply, the Court has reviewed the Complaint and finds that it does not contain any factual allegations to support a plausible § 1983 conspiracy claim involving any Defendant. Accordingly, any claim of § 1983 conspiracy is dismissed.

## C. Plaintiff's Claims of Conspiracy Under 42 U.S.C. § 1985

Plaintiff indicates that his action is also brought under 42 U.S.C. § 1985. That law provides, in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured . . . may have an action for the recovery of damages occasioned by such injury or deprivation . . .

---

Court's responsibility to raise and make counsel's arguments for them." *Moore v. Peters*, 92 F. Supp. 3d 109, 126 (W.D.N.Y. 2015).

42 U.S.C. § 1985(3). Like § 1983, § 1985 "provides no substantive rights itself but merely 'provides a remedy for violation of the rights it designates.'" *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990) (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979)).

The language of 42 U.S.C. § 1985(3), requiring intent to deprive of equal protection of the laws, means that "the conspiracy must . . . be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Odermatt v. Way*, 188 F. Supp. 3d 198, 217 (E.D.N.Y. 2016) (citing *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)), *aff'd sub nom. Odermatt v. New York City Dep't of Educ.*, 694 F. App'x 842 (2d Cir. 2017). "Conclusory allegations of conspiracy are not sufficient to state a claim under § 1985." *A'Gard v. Perez*, 919 F. Supp. 2d 394, 409 (S.D.N.Y. 2013). A plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). Plaintiff's fleeting mention of "racial or other class-based discriminatory animus" required for a § 1985 conspiracy claim is insufficient to state such a claim; and Plaintiff has not alleged, except in the most conclusory fashion, that any meeting of the minds occurred among any or all of the Defendants. His conspiracy allegations under § 1985 therefore, too, must fail.[8]

---

[8] Defendants also request, in their Memorandum of Law in support, that the Complaint be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a)(2), which requires a pleading contain short and plain statements of the claim. (Defs. Br. at 7, 11). "[I]t is improper to assert in a memorandum of law a legal basis for the motion that was not specified in the notice of motion." *I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, No. 19-CV-2776, 2020 WL 5518230, at *2, n.2 (S.D.N.Y. Sept. 13, 2020). Given the conclusions reached herein, the Court need not and does not reach that basis for dismissal.

II.    Plaintiff's Request for Sanctions Against Defendants

In his opposition brief, Plaintiff purports to move for sanctions against Defendants under Federal Rule of Civil Procedure 11, stating that "defendants should be sanctioned accordingly for filing a frivolous motion, wasting the Court's time, creating delay tactics and fabricating facts to avoid dealing with the real issues. . . . It is obvious that defendants['] motion was filed for no purpose other than to harass, cause unnecessary delay, or needlessly increase the cost of litigation." (Pl. Opp'n at 1-2). This is an unsupported and unfair characterization. In any event, a motion for Rule 11 sanctions must be brought in a separate motion, which must be served but not filed or presented to the Court before the other party has had twenty-one days to withdraw the allegedly offending pleading or correct the allegedly offending conduct. Fed. R. Civ. P. 11(c)(2). Plaintiff did not follow this procedure. His request for Rule 11 sanctions is itself defective and is denied. *See Viruet v. City of New York*, No. 16-CV-8327, 2019 WL 1979325, at *18 (S.D.N.Y. May 3, 2019).

**CONCLUSION**

Based upon the foregoing, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is GRANTED in part. The Court dismisses Plaintiff's claims under 42 U.S.C. § 1981; his claims under 42 U.S.C. § 1983 alleging violations of the Eighth, Fourth, and Fourteenth Amendments; and his claims under 42 U.S.C. §§ 1983 and 1985 alleging conspiracy.  While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). For all the reasons described herein, the Court dismisses the foregoing claims alleged in Plaintiff's Complaint with prejudice as any amendment would be futile.

25

Plaintiff's claims under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment are all likewise dismissed with prejudice, except his retaliation claim against Franco for filing the MBR which shall proceed to discovery. Plaintiff's claim under 42 U.S.C. § 1983 against Bodge alleging a violation of the free exercise clause of the First Amendment and RLUIPA shall proceed to discovery as well.

Plaintiff's request for sanctions is DENIED.

The remaining Defendants, Franco and Bodge, are directed to file an Answer to the Complaint by March 10, 2021. The Court will thereafter docket a Notice of Initial Conference.

The Clerk of the Court is respectfully directed to terminate the motion (Doc. 46); to terminate as Defendants Quandera Quick, Salvatore P. Gregory, D. Rodriguez, S.A. Coughlin, R. Williams, Michael Barnes, Michael Capra, Mark Royce, Shelley Mallozzi, and Rebecca A. Loren; and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated:   New York, New York
         February 17, 2021

_____
PHILIP M. HALPERN
United States District Judge

26