

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TYHEEM Y. KEESH,

Plaintiff,

v.

QUANDERA QUICK, et al.,

Defendants.
--------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

19-CV-08942 (PMH)

PHILIP M. HALPERN, United States District Judge:

Tyheem Y. Keesh ("Plaintiff") initiated this action with a complaint docketed on September 26, 2019. (Doc. 2, "Compl.").[1] The action, at its outset, alleged claims under 42 U.S.C. §§ 1981, 1983, and 1985 involving violations of the First, Fourth, Eighth, and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. The matter proceeded initially against twelve employees of the New York State Department of Corrections and Community Supervision ("DOCCS") in their individual and official capacities.

The Court, in a February 17, 2021 Memorandum Opinion & Order (the "Prior Order"), dismissed all claims with prejudice except Plaintiff's retaliation claim against Defendant J.P. Franco, Correction Officer ("Franco") for filing the August 4, 2018 misbehavior report, and his claim against Defendant B. Bodge, Correction Lieutenant ("Bodge" and with Franco, "Defendants") alleging a violation of the free exercise clause of the First Amendment and RLUIPA. (Doc. 50).[2] Defendants filed an Answer to the Complaint on March 8, 2021. (Doc. 51).

---

[1] Citations to Plaintiff's filings correspond to the pagination generated by ECF.

[2] This decision is available on commercial databases. *See Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530 (S.D.N.Y. Feb. 17, 2021).

Plaintiff, on March 22, 2021, filed a motion for reconsideration of the Prior Order. (Docs. 56-59). While the parties briefed that motion, the Court held an initial conference and entered a Civil Case Discovery Plan and Scheduling Order. (*See* Apr. 27, 2021 Min. Entry; Doc. 67). On August 31, 2021, the Court held a conference at which time the parties were heard on Plaintiff's motion for reconsideration, his request made in reply for leave to file an amended complaint, and Defendants' anticipated motion for summary judgment. (*See* Doc. 71). The Court denied the motions for reconsideration and leave to amend, directed the production of certain outstanding discovery, and set deadlines for the filing of Defendants' pre-motion letter and Rule 56.1 Statement in connection with the anticipated summary judgment motion. (*Id.*). Defendants filed their pre-motion letter and Rule 56.1 Statement on October 7, 2021 in accordance with the deadlines set at the conference and memorialized in the Court's August 31, 2021 Order. (Docs. 74, 75). Plaintiff did not file any opposition thereto and, on October 29, 2021, the Court set a briefing schedule for Defendants' motion. (Doc. 76). That briefing schedule was twice extended. (Docs. 82, 91).

Defendants filed their motion—seeking summary judgment on behalf of Bodge only—in accordance with the briefing schedule on January 31, 2022. (Doc. 92; Doc. 93, "Powers Decl."; Doc. 94, "Def. 56.1 Stmt."; Doc. 95; Doc. 96, "Def. Br."). Prior to filing opposition, on February 8, 2022, Plaintiff moved for this Court's recusal and reconsideration of the Prior Order. (Doc. 98). Those requests were denied on February 23, 2022. (Doc. 101). Plaintiff subsequently opposed Defendants' motion for summary judgment by filing an affirmation in opposition (Doc. 102, "Pl. Opp.") and response to Defendants' Amended Rule 56.1 Statement (Doc. 103, "Pl. 56.1 CntrStmt."). Plaintiff, in his opposition, again requested leave to file an amended complaint and sought this Court's recusal. Defendants' motion for summary judgment was briefed fully with the filing of a reply memorandum of law on March 21, 2022. (Doc. 104, "Reply").

For the reasons set forth below, Defendants' motion for partial summary judgment is GRANTED and Plaintiff's requests for leave to file an amended complaint and for recusal are DENIED.

**BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the Complaint, Defendants' Rule 56.1 Statement and Plaintiff's responses thereto, and the Declaration of Janice Powers together with exhibits. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff alleges in the Complaint that after the Tier II Hearing[3] concluded, Bodge found Plaintiff guilty of all charges and imposed a "fraudulent and retaliatory penalty," depriving Plaintiff "of his packages and commissary, which deprived him of practicing his Religious diet[], compelling [Plaintiff] to change and/or modify his Religious practices," causing Plaintiff to "thereafter change[] his Religion and depriv[ing] [him] of [his] ability to represent his fellow prisoners." (Compl. at 70, 88). Bodge is a DOCCS Corrections Lieutenant at Sing Sing and conducted the Tier II Hearing as the assigned hearing officer, beginning on April 7, 2019 and concluding on April 16, 2019. (Doc. 93-1, "Bodge Decl." ¶¶ 1, 3; Powers Decl., Ex. B; *id*., Ex. C; Def. 56.1 Stmt. ¶ 3; Pl. 56.1 CtnrStmt. ¶ 3). At the conclusion of the Tier II Hearing, upon finding Plaintiff guilty of the charges, Bodge imposed a penalty of twenty days' loss of recreation, packages, phone, commissary, and personal television. (Bodge Decl. ¶ 2; Powers Decl., Ex. B; *id*., Ex. C; Def. 56.1 Stmt. ¶ 4; Pl. 56.1 CtnrStmt. ¶ 4).

Plaintiff, prior to and during the twenty-day penalty period, practiced a religion that he founded called Tulukeesh. (Powers Decl., Ex. E, "Pl. Tr." at 31:24-32:11; Def. 56.1 Stmt. ¶ 7; Pl.

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Prior Order.

56.1 CtnrStmt. ¶ 7). A tenet of that religion is a dietary restriction "which was basically vegan." (Pl. Tr. at 32:17-19). The food items needed to practice his religion are beans, rice, fruits, and vegetables. (*Id*. at 33:3-11). Although Plaintiff could not obtain those food items from DOCCS, he could normally purchase them in commissary or receive packages containing such foods. (*Id*. at 32: 19-22, 37:10-14). The record reflects that Plaintiff ordered meat-based and animal-based food items from commissary in January, February, and April, 2019. (Powers Decl., Ex. D; Def. 56.1 Stmt. ¶ 8; Pl. 56.1 CtnrStmt. ¶ 8).

When Plaintiff was placed on keeplock in his own cell as part of his twenty-day penalty and permitted neither commissary nor packages, he contends that he was deprived of this religious diet. (Pl. Tr. at 33:14-15, 34:4-8, 38:14-39:7)). Although trays of food were provided to Plaintiff during this twenty-day penalty period, he refused to eat from them because he was concerned about cross contamination, as they purportedly contained both meat and non-meat products. (*Id*. at 34:15-25). Plaintiff complained to unidentified officers, "but they don't make the menu so there was nothing they could do." (*Id*. at 35:7-13). After the twenty-day penalty period concluded, Plaintiff converted from his Tulukeesh religion to Nation of God and Earth. (Pl. Tr. at 38:24-39:7).

Defendants now move for summary judgment dismissing the Complaint against Bodge.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary

judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted).[4] "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams*

[4] The special solicitude due a *pro se* litigant depends upon that particular party's litigation experience, as "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010); *see also Shomo v. New York Dep't of Corr. Servs.*, No. 04-CV-00910, 2007 WL 2580509, at *3 (N.D.N.Y. Sept. 4, 2007) (observing that granting "experienced *pro se* litigants" the same solicitude due an inexperienced one "would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents"). Plaintiff is undoubtedly experienced in bringing federal lawsuits and appeals, through his extensive *pro se* litigation history during his thirty-two years of incarceration to date (Pl. Opp. ¶ 4). *See, e.g., Keesh v. Capra*, No. 13-CV-02040 (S.D.N.Y. Mar. 27, 2019); *Keesh v. Smith*, 04-CV-00779 (N.D.N.Y. Mar. 25, 2011), *appeal dismissed*, No. 11-1822 (2d Cir. Aug. 12, 2011); *Mills v. Evangelista*, No. 01-CV-7538 (S.D.N.Y. Aug. 14, 2001), *appeal dismissed*, No. 01-0232 (2d Cir. July 3, 2003); *Mills v. Coughlin*, No. 93-CV-0109 (W.D.N.Y. Oct. 4, 1995), *appeal dismissed*, No. 95-2753 (2d Cir. May 6, 1996). Nonetheless, for purposes of this decision, the Court sets aside the fact that Plaintiff's special solicitude should be somewhat diminished due to his considerable litigation experience.

*v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

**ANALYSIS**

Plaintiff contends that Bodge's imposition of a twenty-day penalty deprived him "of his packages and commissary, which deprived him of practicing his Religious diet[], compelling [Plaintiff] to change and/or modify his Religious practices." (Compl. at 70). The claims against Bodge derive from two independent sources: RLUIPA and the Free Exercise Clause of the First Amendment.

RLUIPA protects incarcerated individuals by providing that a government shall not "impose a substantial burden" on the "religious exercise" of prisoners in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means. 42 U.S.C. § 2000cc–1(a). "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Williams v. Annucci*, 895 F.3d 180, 192 (2d Cir. 2018).

Plaintiff's First Amendment claim "proceeds under a slightly different framework." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006). "Prisoners have long been understood to retain some measure of their rights under the Free Exercise Clause." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (internal quotation marks omitted). The right to freely exercise religion, however, must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). Thus, "[e]xamination of [a prisoner's] free exercise claim entails application of a three-part, burden shifting framework." *Johnson v. Guiffere*, No. 04-CV-00057, 2007 WL 3046703, at *5 (N.D.N.Y. Oct. 17, 2007). The prisoner must establish (1) that he or she has a sincerely held religious belief, and (2) that this religious belief was substantially burdened. *Rossi v. Fischer*, No. 13-CV-03167, 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) (citing *Salahuddin*, 467 F.3d at 274). "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Id.* (quoting *Salahuddin*, 467 F.3d at 275). After the defendants articulate such a justification, the prisoner must establish that "the policy is not reasonably related to legitimate penological interests." *Johnson*, 2007 WL 3046703, at *6; *see also Salahuddin*, 467 F.3d at 274. "Such an inquiry is particularly fact-laden, and generally ill-suited for resolution on motion for summary judgment." *Johnson*, 2007 WL 3046703, at *6.

Defendants' motion asserts three bases for an award of summary judgment in Bodge's favor: (1) Plaintiff fails to establish Bodge's personal involvement in the purported violation; (2) Plaintiff's veganism is not a sincerely held religious belief; and (3) Plaintiff is collaterally estopped from litigating dietary complaints related to Tulukeesh.

I. Personal Involvement

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." [5] *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. *See, e.g., Brown v. Artus*, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

Plaintiff's claim against Bodge requires that Plaintiff establish that Bodge participated directly in depriving Plaintiff of his religious diet. It is undisputed that Bodge directly participated in the imposition of the twenty-day loss of privileges including commissary and packages. (Bodge Decl. ¶ 2; Powers Decl., Ex. B; *id*., Ex. C; Def. 56.1 Stmt. ¶¶ 3, 4; Pl. 56.1 CtnrStmt. ¶¶ 3, 4). Defendants argue, however, that there is no allegation in the Complaint or evidence in the record

[5] "Neither the Supreme Court nor the Second Circuit, have explicitly addressed whether, like section 1983, a defendant's personal involvement in the alleged 'substantial burden' on the plaintiff's exercise of religion is a prerequisite to a RLUIPA claim." *Joseph v. Fischer*, No. 08-CV-02824, 2009 WL 3321011, at *18 (S.D.N.Y. Oct. 8, 2009). Other district courts both in and outside of the Second Circuit have concluded that personal involvement is a prerequisite to a RLUIPA claim. *See Dupigny v. Hannah*, No. 20-CV-00836, 2021 WL 151043, at *4 (D. Conn. Jan. 18, 2021); *Corley v. City of New York*, No. 14-CV-03202, 2017 WL 4357662, at *17 (S.D.N.Y. Sept. 28, 2017) (collecting cases); *Joseph*, 2009 WL 3321011, at *18 (collecting cases); *see also Salahuddin*, 467 F.3d at 279 (implicitly recognizing personal involvement as a prerequisite to a RLUIPA claim). This Court finds sound the logic and reasoning of those district courts and therefore joins in holding that personal involvement is a necessary component of a RLUIPA claim. Separately, the Court notes that RLUIPA does not provide for the availability of money damages against defendants in their individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013). Plaintiff seeks $4,000,000 in money damages but does not seek injunctive relief under RLUIPA in this action. (*See* Compl. ¶¶ 94, 95 (setting forth with specificity the declaratory and injunctive relief sought in this action); *id.* ¶ 96). The RLUIPA claim is pressed against Bodge only in his individual capacity. (*See* Doc. 50 at 10 (dismissing money damages claims alleged against Defendants in their official capacities)). Thus, even if this claim were not dismissed for lack of personal involvement, it would be dismissed on the alternative ground—albeit one Defendants did not raise—that it improperly seeks money damages against Bodge in his individual capacity.

to establish that Bodge participated directly in the *violation* of Plaintiff's free exercise rights, that he was *aware* of any such violation, or that he was *responsible* for addressing any such violation. In other words, Defendants' argument is that directly participating in the deprivation of commissary and packages privileges does not equate to directly participating in the deprivation of a religious exercise.

The sentence issued by Bodge does not, in and of itself, constitute a violation of Plaintiff's free exercise rights. *Dixon v. Goord*, 224 F. Supp. 2d 739, 752 (S.D.N.Y. 2002). Involvement in a disciplinary hearing alone is insufficient to establish personal involvement in a subsequent constitutional violation. *Booker v. Maly*, No. 12-CV-00246, 2014 WL 1289579, at *16 (N.D.N.Y. Mar. 31, 2014) (hearing officer not personally involved in allegedly unconstitutional conditions in SHU where officers were not involved in "maintaining the conditions in SHU or expected plaintiff to be subjected to anything more than the 'normal' conditions in SHU"), *aff'd*, 590 F. App'x 82 (2d Cir. 2015). The record evidence must establish some reason for an officer to think or know "his ministerial duties could have any impact on plaintiff's religious practice or . . . subvert plaintiff's constitutional rights." *Wesley v. Muhammad*, No. 05-CV-05833, 2008 WL 236974 at *1 (S.D.N.Y. Jan. 28, 2008). In other words, where a plaintiff advances a free exercise claim, he must establish that the defendant at least had reason to know "the facts rendering [his conduct] illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001); *see also Brandon*, 938 F.3d at 38. Absent evidence that a defendant had reason to know his conduct burdened the plaintiff's religious practice, they cannot be held liable for having done so. *Kravitz v. Purcell*, No. 16-CV-08999, 2022 WL 768682, at *9 (S.D.N.Y. Mar. 14, 2022); *see also Porter v. Bunch*, No. 16-CV-05935, 2019 WL 1428431, at *16 (S.D.N.Y. Mar. 29, 2019) (explaining that the defendant could not be held liable for failing to provide a religious accommodation where that

accommodation had not been requested); *Perez v. Westchester Cty. Dep't of Corr.*, No. 05-CV-08120, 2007 WL 1288579, at *3 (S.D.N.Y. Apr. 30, 2007) (same).

Plaintiff disputes the fact that Bodge is not responsible for commissary or food services at Sing Sing "in so far that it alleges and/or implies that defendant Bodge was not responsible for Plaintiff being deprived of commissary and/or food service at Sing Sing." (Pl. 56.1 CntrStmt. ¶ 6). Plaintiff argues in his opposition that Bodge imposed that sentence "with the understanding that he would be depriving me of food in accordance to [sic] my Religious scruples." (Pl. Opp. ¶ 1; *see also id*. ¶ 7). Plaintiff bases that conclusion on the unsupported and newly added allegation contained in his affirmation in opposition that on July 5, 2014, he informed Bodge that as a Tulukeesh practitioner he was required to eat an animal-free diet, that DOCCS was not required to provide such diet, and that he was required to obtain it through commissary and/or packages. (*Id*. ¶¶ 2, 7). Plaintiff additionally contends that as the Watch Commander, Bodge was responsible for ensuring that inmates receive "nutritious adequate food." (*Id*. ¶ 6).

Defendants urge the Court to disregard these new allegations contained solely in Plaintiff's affirmation in opposition. Plaintiff, at his deposition, testified that during the twenty-day period he was deprived of commissary and packages, he complained to unidentified officers, "but they don't make the menu so there was nothing they could do." (Pl. Tr. at 35:7-13). Plaintiff also testified prior to the Tier II Hearing, his interactions with Bodge consisted of comments about "nothing." (Pl. Tr. at 29:5-24 (describing his prior interactions with Bodge, noting that Bodge had served as hearing officer in connection with a 2014 disciplinary hearing and testifying that the only other interactions Bodge had with Plaintiff were that "he would make comments like walking past my cell. And just looking in just making comments about nothing.")). The record evidence establishes

that Plaintiff did not raise any issues concerning his dietary restrictions to Bodge at the Tier II Hearing or when the sentence was imposed. (Bodge Decl. ¶ 4; Powers Decl., Ex. C).

Although the new allegations in Plaintiff's affirmation do not directly contradict his deposition testimony, during his deposition, Plaintiff did not raise these allegations which he subsequently included in his affirmation, despite his opportunity to do so in response to opposing counsel's questioning. Even where there is not a direct contradiction between prior deposition testimony and new allegations in a subsequent affirmation, on a motion for summary judgment the Court is not required to accept the new allegations as "genuine" issues for trial. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."); *Petrisch v. HSBC Bank USA, Inc.*, No. 07-CV-03303, 2013 WL 1316712, at *10 (E.D.N.Y. Mar. 28, 2013); *Heletsi v. Lufthansa German Airlines, Inc.,* No. 99-CV-04739, 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001) ("A party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment."); *see also Patterson v. Patterson*, No. 20-CV-02552, 2022 WL 356513, at *6 (S.D.N.Y. Feb. 7, 2022); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 520 (S.D.N.Y. 2015).

It is undisputed that Bodge imposed a penalty against Plaintiff that included loss of commissary and packages for twenty days, so it cannot be said that Bodge had no hand in Plaintiff's loss of commissary privileges at Sing Sing. But otherwise, the Court deems undisputed the fact that Bodge is not responsible for commissary or food services at Sing Sing. Plaintiff's mere denial and new allegations of facts that are unsupported by evidence and conspicuously absent from the Complaint and his deposition testimony, are insufficient to create a genuine dispute of fact. *See Petrisch*, 2013 WL 1316712, at *11 (declining to consider new facts in opposition to

summary judgment motion where plaintiff "had the opportunity to testify about the new allegations during her depositions" because "[p]ermitting plaintiff to add speculative and conclusory allegations to bolster her claims after defendants have moved for summary judgment without permitting defendants to conduct discovery on those new allegations would make plaintiff's case a moving target" and the defendants had been "denied the opportunity to ask follow-up questions and obtain more specific information.").

The record is wholly devoid of evidence of Bodge's personal involvement in the alleged deprivation of Plaintiff's right to exercise his religion. In other words, the bare allegation that a hearing officer imposed a penalty limiting a prisoner's access to certain privileges is insufficient to impute liability where there is no evidence that the defendant knew or had reason to know that the penalty imposed would result in a burden on Plaintiff's exercise of his religion, that he was aware of any such subsequent violation, or that he was responsible for addressing any such violation. In the face of Bodge's express denial of knowledge or responsibility and there being no prior allegation or proof to that effect, Plaintiff's conclusory allegations suggesting that Bodge somehow understood the sentence would deprive Plaintiff of his religious diet and that Bodge was responsible for ensuring that inmates receive "nutritious adequate food" (Pl. Opp. ¶¶ 1, 6-7), are insufficient to raise an issue of fact and to avoid summary judgment. *See Brown v. Artus*, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009) (citing *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) and *Russo v. City of Bridgeport*, 479 F.3d 196, 210-11 (2d Cir. 2007)).

Accordingly, Defendants' motion for summary judgment dismissing the claims alleged against Bodge is granted based upon his lack of personal involvement in the alleged violation. In light of the conclusion reached herein, the Court does not reach the other grounds raised by Defendants on their motion concerning sincerely held religious beliefs and collateral estoppel.

II. Plaintiff's Requests for Leave to Amend and for Recusal

Plaintiff, by way of his affirmation in opposition, seeks leave to file an amended complaint and this Court's recusal. (Pl. Opp. ¶ 29). Plaintiff previously sought and was denied leave to file an amended complaint, a request made in his reply papers on the motion for reconsideration of the Prior Order. (*See* Docs. 56-59, 68-69; Doc. 71). Plaintiff likewise previously sought and was denied this Court's recusal. (Doc. 98; Doc. 101).

This type of "cross-motion" is procedurally improper and may be denied on that basis and without regard to its merits. *Sbarra v. Port Auth. of N.Y. & N.J.*, No. 10-CV-08580, 2011 WL 4344078, at *8 (S.D.N.Y. Sept. 9, 2011); *see also* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."); *Thomas v. Morley*, No. 20-CV-07520, 2022 WL 394384, at *16 (S.D.N.Y. Feb. 9, 2022) ("Plaintiff's request to amend, contained solely in [his] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading[,] is improper under Fed. R. Civ. P. 15."); *cf. Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *2 (S.D.N.Y. June 23, 2021) (denying motion for default judgment made in opposition brief); *Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12 (S.D.N.Y. Feb. 17, 2021) (denying request for sanctions made in opposition brief); *Martin v. Mihalik*, No. 19-CV-07979, 2021 WL 1738458, at *1 (S.D.N.Y. May 3, 2021) (denying motion for pro bono counsel made in opposition brief); *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider a "cross-motion" made in opposition brief).

The Court nonetheless considers and addresses Plaintiff's requests.

A. Leave to Amend

Plaintiff's successive requests to file an amended complaint reinstating the claims previously dismissed with prejudice have consistently failed to show why the Court should give leave when the claims were already dismissed without leave to replead. The Second Circuit has instructed that "a *pro se* plaintiff 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). "[L]eave to amend, though liberally granted, may properly be denied for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Vasquez v. Yadali*, No. 16-CV-00895, 2020 WL 6384067, at *1 (S.D.N.Y. Oct. 30, 2020). Deciding such a motion falls within the Court's discretion. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

"[L]eave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Here, Plaintiff has suggested the material he wishes to plead, but no new facts that would cure the substantive deficiencies clearly discussed in the Prior Order. Indeed, Plaintiff simply seeks to reinstate the claims and defendants that were dismissed because he disagrees with the outcome of the Prior Order. These claims have already been considered multiple times, were dismissed with prejudice, and could not survive a motion to dismiss. Thus, the proposed amendment is futile. *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (explaining that "leave to amend is not necessary when it would be futile"); *Reed v. Hales*, No. 05-CV-06497, 2006 WL 3207661, at *1 (W.D.N.Y. Nov. 3, 2006) (denying the request to file an amended complaint because the application was conclusory and offered no explanation as to how "the underlying facts or circumstances relied upon in seeking

leave to amend are a proper subject of relief"); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (internal quotation marks omitted)). The problem with the proposed amended claims is that they are restatements of previously dismissed claims that failed as a matter of law and cannot be cured by amendment. *See Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020). Separately, at this late stage of the litigation, the proposal to amend to "reinstate" the claims dismissed in the Prior Order is untimely. Accordingly, leave to amend is denied.

B. Recusal

The thrust of Plaintiff's argument for recusal is that I am precluded from presiding over this case because I dismissed certain of his claims in the Prior Order. (Pl. Opp. ¶ 28). Plaintiff contends, and has consistently alleged since I entered the Prior Order granting in part a motion to dismiss, that I "sought to cover up to [sic] racism and religious bigotry . . . at Sing Sing" (Doc. 59), and other *ad hominem* attacks (*id.*; *see also* Docs. 72, 98). Plaintiff, in connection with each of these baseless attacks, sought the reinstatement of the claims dismissed by way of the Prior Order—an improper backdoor attempt to obtain the relief sought on his motions for reconsideration and leave to amend.

As stated in my previous endorsement denying Plaintiff's earlier motion for recusal, Plaintiff's application is not timely as it is made after almost two years of litigation since I was assigned to this case, and follows a partially unfavorable decision to Plaintiff and the service of Defendants' motion for summary judgment. (Doc. 101). Even if Plaintiff's application was timely made, the Court has reviewed the facts and finds that there is no valid basis for disqualification and/or recusal under the substantive standards of 28 U.S.C. sections 144 and 455.

Section 144 provides that a judge should recuse himself when a party has filed a "timely and sufficient affidavit" showing that the judge has "a personal bias or prejudice" against the party or in favor of an adverse party. The statute requires that another district court judge be assigned to hear the matter if the movant establishes both that the disqualification motion is timely and the party's affidavit is legally sufficient. The standard for an affidavit's legal sufficiency under Section 144 in this Circuit requires that it "show the objectionable inclination or disposition of the judge; it must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Williams v. New York City Hous. Auth.*, 287 F. Supp. 2d 247, 249 (S.D.N.Y. 2003) (internal quotation marks omitted). Section 455(a) provides that a judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. The Second Circuit similarly applies an "objective" standard to the inquiry under 28 U.S.C. § 455(a), asking: "would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). Additionally, Section 455(b)(1), like Section 144, prescribes recusal where a judge has "a personal bias or prejudice" concerning a party. 28 U.S.C. §§ 144, 455(b)(1).

Although Section 455 does not explicitly contain a timeliness requirement, it "has been read into this section as well." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987) (citing *In Re Int'l Bus. Mach. Corp.*, 618 F.2d 923, 932 (2d Cir. 1980)). Thus, as to timing, both a motion for disqualification and one for recusal must be filed "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Flores v. Town of Islip*, No. 18-CV-03549, 2020 WL 1293425, at *5 (E.D.N.Y. Mar. 19, 2020) (citing *Apple*, 829 F.2d at 333).

As to the substantive standards of Sections 144 and 455, courts have concluded that they are to be construed *in pari materia. See Apple*, 829 F.2d at 333 (citing *United States v. Pugliese*, 805 F.2d 1117, 1125 (2d Cir. 1986)). "The analysis is the same under both sections [144 and 455(b)(1)], that is, it looks to extrajudicial conduct as the basis for making such a determination, not conduct which arises in a judicial context." *Id*. (citing *In Re Int'l Bus. Mach. Corp.*, 618 F.2d at 928). Section 455(a) provides broader grounds for recusal than Sections 144 and 455(b)(1), but nonetheless, "the substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Id*. The district judge whose impartiality, personal bias, or prejudice is in question "must review the facts . . . for their legal sufficiency and not recuse himself or herself unnecessarily." *Williams*, 287 F. Supp. 2d at 249 (citing *Rosen v. Sugarman*, 357 F.2d 794, 797 (2d Cir. 1966)).

The timeliness requirement of motions to disqualify and for recusal is strictly applied to avoid gamesmanship where a party samples the temper of the court prior to their motion. *See In re Int'l Bus. Mach. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995); *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 154-155 (S.D.N.Y. 2012) (collecting cases), *objections overruled sub nom*, No. 11-CV-01279, 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012); *Lamborn v. Dittmer*, 726 F. Supp. 510, 514-15 (S.D.N.Y. 1989). In *Apple*, for example, the Second Circuit found that a two-month delay in bringing a motion for recusal rendered it untimely; notably there, unlike here, the movant had not waited for an unfavorable decision from the court prior to making its motion. 829 F.2d at 334; *see also Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, No. 97-CV-05499, 2003 WL 282187 at *1, *4 (S.D.N.Y. Feb. 7, 2003) (two-month delay untimely), *aff'd*, 124 F. App'x 73 (2d Cir. 2005); *Katzman v. Victoria's Secret Catalogue*, 939 F. Supp. 274, 277-78

(S.D.N.Y. 1996) (same). Under these circumstances, it simply cannot be said that the motion was brought "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Flores*, 2020 WL 1293425, at *5 (quoting *Apple*, 829 F.2d at 334). Accordingly, Plaintiff's motion is untimely under Sections 144 and 455.

Even if Plaintiff's affirmation were timely, it fails to show the "objectionable inclination or disposition of the judge" that would prevent or impede impartiality of my judgment herein. Likewise, the application under Section 455 does not present facts warranting the Court's recusal. Specifically, the conclusory, speculative, and baseless allegations that some of Plaintiff's claims were dismissed for racially-based reasons is belied by the record and a thorough analysis of Plaintiff's claims prior to their partial dismissal. There has been no evidence presented of any opinion held by me short of pure speculation, no allegation that I have displayed any favoritism or antagonism to any party in this action, and no indication of any bias or prejudice herein. I did rule against Plaintiff when I granted, in part, the motion to dismiss herein and when I twice denied motions to reconsider that decision, each time providing thorough analysis of Plaintiff's claims under applicable legal precedent. The fact that some of Plaintiff's claims did not withstand a motion to dismiss is patently insufficient to form the basis of a recusal motion.

Finally, there is "as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Rosen*, 357 F.2d at 797. Because the Court finds that grounds do not exist to warrant recusal under the circumstances, Plaintiff's motion for recusal is, accordingly, denied in all respects.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment is GRANTED and the claim for relief against Bodge is dismissed with prejudice. Plaintiff's motions for leave to amend and for recusal are DENIED. Plaintiff's sole remaining claim for relief, retaliation against Franco concerning the August 4, 2018 misbehavior report, shall proceed to trial.

A pretrial conference is scheduled for July 18, 2022 at 10:00 a.m. At the time of the conference, all parties shall call: (888) 398-2342; access code: 3456831. Defense counsel is reminded that it is their responsibility to ensure Plaintiff's appearance on that date.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 92, terminate Bodge as a party to this action, and mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated: White Plains, New York
June 15, 2022

PHILIP M. HALPERN
United States District Judge